# Chicago & Joliet Electric Railway Company v. Samuel Spence.

## Gen. No. 4,391.

1. PHOTOGRAPHS—*when, properly taken by jury upon retirement.* It is proper to permit the jury to take with them upon their retirement a photograph which has been duly received in evidence without question as to its competency, notwithstanding if objected to it might have been held incompetent.

2. EARNING CAPACITY—*competency of proof of, in personal injury case.* It is competent in such a case to introduce evidence which tends to show the particular ability of the plaintiff in the line or lines of work which he was accustomed to perform and his consequent earning capacity.

3. CONDUCT OF PLAINTIFF—*when, will not reverse.* The mere fact that the plaintiff in a personal injury case trembled during the trial will not reverse, in the absence of evidence that such trembling was simulated, notwithstanding it may appear that upon other occasions he did not tremble and that such trembling was capable of simulation.

4. ARGUMENT OF COUNSEL—*when, cannot be objected to.* In the absence of an objection, an adverse ruling and an exception thereto, an argument of counsel cannot be complained of upon appeal.

5. INSTRUCTIONS—*must relate to facts.* Instructions should relate solely to the facts of the case and the jury should be instructed to find against the plaintiff upon a particular fact only where it appears that there is no evidence in the cause tending to establish such fact.

6. VERDICT—*when, not excessive.* A verdict of $14,000 is not excessive where it appears that the plaintiff up to the time of his injury was a strong, robust and capable man, had the capacity to superintend work upon large industrial enterprises, was then about fifty-three years of age and earning $1,500 per year, and where further there was evidence tending to show serious permanent injuries, internal and external, of such a nature as entirely to disable him from all participation in the active affairs of life, and which, likewise, demand that he should act with great care to avoid unusual exertion which might at once end his life, and where it further appeared that his physical condition was such as to render his remaining existence miserable and that he suffered severe pain.

Action on the case for personal injuries. Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

E. MEERS, for appellant.

EDDY, HALEY & WETTEN and J. L. O'DONNELL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

In March, 1902, the Chicago and Joliet Electric Railway Company was operating an electric car line between Chicago and Joliet. At a point near the Sag, a valley northeast of Lemont, it had a double track, but one of said tracks was out of use there, owing to a washout, and cars going in each direction had to use the remaining track. On March 28, during a fog, and owing to some misunderstanding, two cars going in opposite directions on the same track came into collision; the cars were demolished, one or more persons were killed, and other persons were seriously injured, including Samuel Spence, a passenger. He brought this suit against said railway company to recover damages for said injuries, and recovered a verdict and a judgment for $14,000, from which judgment the railway company prosecutes this appeal.

Defendant does not question its liability, but it contends that the damages are excessive, and that the trial court committed certain errors upon questions affecting the damages.

Plaintiff received severe external injuries, some of which were of a temporary character, but the proof largely related to internal injuries. He apparently received some blow in the breast. The left side of his chest was depressed, and it was a question whether thereby the heart was enlarged, forced out of place and its action disarranged. There was proof tending to show an obstruction of the aorta, the vessel which conveys the arterial blood from the heart to the other arteries leading to all parts of the body, which obstruction plaintiff's physician attributed to pressure resulting from fibrous adhesion due to hemorrhage in and about the aorta. The proof introduced by plaintiff tended to show that the injury to the heart and to the great artery was incurable, that it caused plaintiff's permanent disability to engage in the active pursuits of life, and that any extraordinary exertion by plaintiff would be likely to result in

his death, owing to the feebleness of the action of his heart. This organ being out of sight, plaintiff introduced in evidence a skiograph or X-ray photograph of a portion of his chest, made by a person engaged in the business of taking such pictures for physicians, and claiming to be an X-ray expert, the object of the proof being apparently to show the displacement of the heart, a thickening of the walls of the heart or the existence of unusually thick tissue in that vicinity, and to show generally the condition existing in and about plaintiff's heart. Afterwards defendant called another X-ray expert, whose testimony tended to establish the value of such pictures, when properly taken, to show the condition of the internal organs of a patient; but he pronounced plaintiff's skiograph worthless, and gave in detail the reasons for his adverse criticism. When the jury retired defendant objected to this picture being taken by the jury to the jury room, but the court overruled the objection and allowed the picture to go to the jury room. It is argued the court erred in admitting the skiograph, and in permitting it to be taken to the jury room after it had been discredited. We have no doubt that the evidence of defendant's X-ray expert shows such a picture can be a valuable aid to a disclosure of some internal conditions. We conclude that the testimony of the expert who took this picture made a proper case for its admission in evidence. It may be that the testimony of defendant's expert strongly tended to show that this picture was not well taken, and was of but little value, but defendant did not then move to exclude it, or raise the question whether that proof would warrant its exclusion. Articles which are in evidence are properly sent to the jury room. Our statute says (chap. 110, sec. 55): "Papers read in evidence other than depositions, may be carried from the bar by the jury." It is said in 12 Ency. of Pl. & Pr., 591-2, that the modern doctrine is that all papers and documents given in evidence (except depositions in some jurisdictions,) may properly be allowed to go out with the jury, and that the term "papers in evidence" is construed to embrace almost all kinds of

documentary evidence, including exhibits, whether moist or dried, solid or liquid. This picture was in evidence and no reason was shown to the court why it should be treated differently from any other exhibit which had been duly admitted. When defendant objected to its being sent to the jury room, it gave no reason for the objection, and did not ask that it be excluded or question its competency as evidence. Being properly in evidence it was properly sent to the jury room.

Plaintiff proved that he was assistant superintendent of the Western Stone Company from 1889 to 1892, at a salary of $1,500 per year; that he was superintendent of said company from 1892 to 1897, receiving $2,500 per year till some time in 1893, and thereafter $2,100 or $2;250 per year; that he then became superintendent of a quarry in Tennessee for five or six months at $100 per month and his expenses; that he then worked for the Sanitary District of Chicago two years, inspecting bridges, abutments and piers at $100 per month; that he next worked putting in concrete work for the water wheels of an electric light company at Kankakee at $125 per month and his board; that he was next employed putting in abutments for a bridge in Joliet at $125 per month; that he next worked for the Sanitary District at the controlling works at Lockport for $150 per month; and that thereafter till he was injured he was time-keeper and inspector at $125 per month for a construction company, which was putting up a line of poles to conduct electrical power from Joliet to Bridgeport. Defendant duly preserved the question of the competency of so much of this proof as showed the compensation paid plaintiff by the Western Stone Company and while superintendent of a quarry in Tennessee. It is argued this was too remote in time from the injury, and that it was employment of a different nature from that in which he was engaged at the time he was injured. Defendant relies upon West Chicago St. R. R. Co. v. Maday, 188 Ill. 308, where the trial court admitted over objection proof of what plaintiff earned during the ten or twelve years before

the last five years preceding his injury, in an employment which he had abandoned five years before he was injured. The Supreme Court held it was error to permit plaintiff to prove what he had earned in an employment he had abandoned so long before the injury, the facts being too remote and dependent on too many collateral circumstances to give the jury any correct information of plaintiff's earning power at the time of the injury, and of which he had been deprived by the injury; but that such error ought not to reverse, as it was apparent that proof was not prejudicial to defendant. In West Chi. St. R. R. Co. v. Dougherty, 209 Ill. 241, the plaintiff testified he had earned $100 per month in a rolling mill for sixteen years, and about two months before his injury he had left the mill and engaged in a much less remunerative employment. It was argued it was error to permit proof that he earned $100 per month in the mill, but it was held that as it showed what he earned but two months before the injury it was competent. The proof in the present case tended to show plaintiff had ability as a superintendent, inspector and supervisor of the labor of others, capable of being profitably used in many different kinds of work, and we are unable to see that it was error thus to show plaintiff's earning ability by the actual facts, as he had usually acted in such capacity of superintendent or inspector. But if its admissibility were questionable, still we fail to see how the proof objected to could harm defendant. Plaintiff was about fifty-three years old at the time of this accident, and at that time he was earning $1,500 per year. The evidence objected to shows that from 1892 to 1897 he received from $2,500 to $2,250 or $2,100 per year, beginning at the higher figure, and coming down in 1893, and that after 1897 he dropped to a lower figure than his salary at the date of the injury. In 1892 he was about forty-three years old. This proof then shows that when from forty-three to forty-eight years old he received his highest salary, and since then he has been receiving less. This proof tended against plaintiff by showing that his earning capacity was decreasing with his

advancing age, and that he passed the high water mark in 1893, when he was forty-four years old. We are of opinion the proof to which objection is made was not harmful to plaintiff.

Defendant's proof shows that plaintiff trembled very much in the court room and on the witness stand, and exhibited in the presence of the jury the appearance of great weakness. A medical witness for defendant who called upon plaintiff twice at his house, and another who called upon him at one of those times, and another witness who called upon him once, each testified he did not then tremble, and one medical witness for defendant testified that such trembling could be feigned or produced by the patient. It is argued this feeble appearance was simulated, and that the jury believed it genuine, and were thereby misled in the assessment of the damages. No witness testified that defendant was feigning, but only that such an appearance could be produced by pressing upon a nerve, and that plaintiff did not tremble on one or two former occasions. This was a question for the jury. The objection here raised concedes that the jury believed the appearance of plaintiff was genuine, and was due to actual weakness produced by this accident. It is fair to presume that the trial judge believed it. There is nothing in the record which would justify us in disturbing their conclusion upon that subject.

Defendant has preserved in its bill of exceptions a paragraph from the closing argument of counsel for plaintiff with its objection thereto. It is not clear to us whether the court sustained or overruled the objection, but defendant did not preserve any exception. If the objection was sustained defendant cannot be heard to complain. Swift & Co. v. Rutkowski, 182 Ill. 18. If the objection was overruled, defendant did not preserve an exception thereto, and hence he cannot be heard to question the ruling here. Matthews v. Granger, 196 Ill. 164; Quincy Gas & Electric Co. v. Baumann, 203 Ill. 295.

The court refused three instructions requested by de-

fendant. Complaint is here made of the refusal of the second of these only. It was to the effect that no evidence had been introduced that by reason of plaintiff's injuries at the time of the accident, a cyst had been produced within his body, and the jury were not to allow any damages for said alleged cyst. The second count of the original declaration charged, among other injuries to plaintiff, that "the breast of the said plaintiff was then and there crushed in and divers blood vessels then and there by the means aforesaid ruptured, by means of which a cyst or unnatural growth has been caused and produced, and which causes great pains to the said plaintiff, and interferes with the functions of said plaintiff's heart and lungs, and which destroys his rest and wholly unfits plaintiff for work." The first and second additional counts alleged that by said injuries "a cyst or unnatural growth" had been produced in plaintiff's body, which caused him great pain. Defendant asserts there is no proof of a cyst. We have not read all the medical testimony to see whether it anywhere describes a formation corresponding to the definition of a "cyst." It may be that that term was not correctly used in the counts referred to. But the allegation was not merely of the formation of a cyst, but of "a cyst or unnatural growth." One of plaintiff's witnesses testified that in his opinion there was an unnatural growth pressing upon the aorta and producing the defective action of the heart. There was therefore proof of the averment, and it was proper to refuse the instruction. But further, section 51 of the Practice Act requires that "the court, in charging the jury shall only instruct as to the law of the case." The proper office of an instruction is to lay down the law applicable to a state of facts which the proof tends to establish. It may well be doubted whether it is the proper office of an instruction to tell the jury there is no proof of a certain allegation, except to direct a verdict for defendant as to a count or counts not supported by proof. But here, the allegation as to a cyst or unnatural growth was not the only allegation of injury to plaintiff in any of the counts where it was mentioned, so that defendant was not entitled

to ask an instruction to find for defendant as to any count wherein the cyst was mentioned as one of the injuries plaintiff received. By an instruction given at defendant's request the jury were told that in deciding the case they should look solely to the evidence for the facts. If there was no evidence of a cyst, then this instruction forbade their considering a cyst.

Finally, it is urged that the damages are so great that we should not allow the verdict to stand. The proof shows that, up to the time of his injury, plaintiff was a strong, robust, healthy and capable man, who had the capacity to superintend work upon large industrial enterprises. He was then about fifty-three years of age and was earning $1,500 per year. The proof was very conflicting as to the seriousness of his permanent injuries, especially of his internal injuries. If the proof introduced by plaintiff was true, plaintiff was entirely disabled from all participation in the active affairs of life, must act with great care to avoid such unusual exertion as might end his life at once, and is so weak and nervous as to make his remaining existence miserable. That he has suffered severe pain is unquestioned. He testified that he continues to suffer extreme pain in the region of the heart, and has great difficulty in sleeping. We find no grounds which would warrant us in saying that the conclusions of the jury, approved by the trial judge, as to the truth of the proof introduced by plaintiff, ought to be set aside. The verdict is for a large sum, but we do not feel justified in saying it is so large as to indicate that the jury were actuated by passion or prejudice. The jury had a right to compensate him for his pain and suffering as well as for his loss of ability to earn a livelihood. His loss of livelihood might rest to some extent in computation, but the amount which should be awarded for pain and suffering could best be judged by those who saw him and heard the testimony.

None of the reasons assigned in argument would justify a reversal of the conclusions of the jury and trial judge.

The judgment is therefore affirmed.

*Affirmed.*