**Christopher Schulk, Appellee, v. Joliet & Southern Traction Company et al., Appellants.**

**Gen. No. 5179.**

1. NEGLIGENCE—*when doctrine res ipsa loquitur applies. Held,* that the doctrine *res ipsa loquitur* applies where it was shown that the accident resulted from the negligent construction and maintenance of a derailing apparatus.

2. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* A servant assumes such risks as are matters of common observation, but when the danger to be avoided requires a knowledge of scientific facts, an ordinary servant is not presumed to have knowledge of them and the rule of assumed risk has no application.

3. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* A servant does not assume the risk of a dangerous condition of which he has no knowledge and of which in the exercise of ordinary care he could not know.

4. MASTER AND SERVANT—*when negligence of fellow-servant will not preclude recovery.* Where the negligence of the master is combined with the negligence of a fellow-servant in producing an injury and neither is the sufficient cause alone, the master is liable.

5. INSTRUCTIONS—*when failure to define fellow-servant rule not ground for reversal. Held,* that under the instructions given and in view of the failure of the defendant to ask an instruction upon the fellow-servant rule, it was not error for the court to neglect to give such an instruction.

6. INSTRUCTIONS—*when refusal to instruct jury to disregard particular counts not ground for reversal.* The refusal of the court to instruct the jury to disregard certain counts in the declaration is not reversible error when there is one or more good counts to sustain the judgment to which the evidence is applicable.

7. INSTRUCTIONS—*when cannot be complained of.* A party can only assign error with respect to the action of the court in giving or refusing instructions where such action injuriously affects his rights.  In other words, instructions given on behalf of a co-defendant are not ordinarily a proper subject for assignments of error by the other defendant.

Action in   case for personal injuries.  Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.  Heard in this court at the April term, 1909.  Affirmed. Opinion filed March 11, 1910.  Rehearing denied April 13, 1910. *Certiorari* denied by Supreme Court (making opinion final).

JOHN M. RAYMOND, JOHN K. NEWHALL and GARNSEY, WOOD & LENNON, for appellant.

JOHN W. D'ARCY, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action in case commenced in the Circuit Court of Will county by Christopher Schulk against the Joliet & Southern Traction Company and the Elgin, Joliet & Eastern Railway Company, to recover for injuries received by plaintiff in a collision between a locomotive of the Elgin, Joliet & Eastern Railway Company, upon which plaintiff was employed as a fireman at the time of the accident, and an interurban car of the Joliet & Southern Traction Company. Plaintiff recovered a verdict for $5,500 against both defendants.  The court required a *remittitur* of $1,500 to be entered before it overruled the motion for a new trial and rendered judgment against the defendants for $4,000.  Both defendants appeal and file separate assignments of error and briefs.

The declaration contains five counts.  The first count avers that the Joliet & Southern Traction Company (hereinafter called the traction company) was engaged in the management of a street railway system, with cars propelled by electric power, upon a certain public highway in the township of Lockport, between the city of Joliet and the village of Plainfield, and

that the Elgin, Joliet & Eastern Railway (hereinafter called the railway company) was possessed of a railroad which extended through the township of Lockport intersecting the tracks of the traction company, and avers that it was the duty of the defendants to manage and operate their respective cars, trains and engines with all reasonable care so as not to injure the plaintiff, then an employe of the railway company working as a fireman on one of its engines; that it was the duty of the traction company to operate and manage its cars with reasonable care so as to prevent a collision with the engines and cars operated on the tracks of the railway company, and it was the duty of the railway company to operate its locomotives so as not to collide with the cars on the right of way of the Joliet & Southern Traction Company, and avers that the defendants notwithstanding their duties negligently and wrongfully, when plaintiff was working as a fireman on one of the locomotive engines of the railway company, in the exercise of reasonable care for his own safety, permitted a car on the tracks of the traction company to collide with, or be struck by a locomotive engine on the tracks of the railway company, by reason whereof plaintiff was permanently injured, and avers that the injuries did not result from an assumed risk and were not caused through the negligence of a fellow-servant.

The second count after averring the intersection of the railway and street car systems of the defendants, avers that the defendants provided a certain appliance on the tracks of the traction company for the purpose of derailing cars running on the tracks of the traction company at a distance of, to wit,- 200 feet from the tracks of the railway company and that it was the duty of the defendants in laying out, constructing and operating said derailing tracks for the purpose of derailing cars on the right of way of the traction company, to use reasonable care to make said tracks of sufficient length or distance from said in-

tersection to prevent cars on the traction company's tracks from stopping on the tracks of the railway company, when derailed, whereby cars thereon would not come in contact with engines in motion on the tracks of the railway company; yet the defendants carelessly and negligently constructed and maintained said derailing system by making the same of insufficient length from the tracks of the railway company and of improper grade to prevent the cars of the traction company when derailed from running upon and over the tracks of the railway company, by reason whereof when plaintiff, an employe of the railway company, was working as fireman on one of its locomotives, and a car upon the tracks of the traction company was running at a high rate of speed, and when an engine, on the right of way of the railway company on which plaintiff was working in the exercise of due care, was proceeding in a northerly direction, a car on the tracks of the traction company was derailed and ran into and upon the intersection of the railway company's tracks, whereby said car was there struck by said engine on the track of the railway company, whereby plaintiff in the exercise of reasonable care was permanently injured, etc., and avers the injury was not the result of an assumed risk nor caused through the negligence of a fellow-servant.

The third count is similar to the second but avers a system of signals which it was the duty of the defendants to observe and that the defendants neglected to operate said system with reasonable care.

The fourth count avers that it was the duty of the traction company and the railway company to use reasonable care to provide and operate a reasonably safe and efficient system of signals but that the defendants negligently failed to maintain and operate such a system.

The fifth avers negligence in the speed at which the engine and street car approached the intersection.

The evidence shows that the Plainfield road runs from

Joliet to Plainfield in a northwesterly direction. On the northeast side of this road is located the track of the traction company. The railway company has a branch road which runs around the outside of the city limits of the city of Joliet to reach certain mills and crosses the tracks of the traction company about three miles from Joliet where the railway company's tracks run in a southwesterly and northeasterly direction. The tracks of the railway company from the southwest are down grade to the tracks of the traction company and the tracks of the traction company are down grade for a distance of about 1,700 feet from the southeast to within about 400 feet of the intersection with the railway company. Both tracks descend towards that point and rise after they leave it. On the day of the accident about seven o'clock in the evening of June 4, 1908, appellee was a fireman making his third trip over this railroad on a freight engine with a train of cars of the railway company going northeast. The traction company's line was built first. When the railroad was built the officials of the railway company and the traction company consulted with reference to the intersection and the railway company, with the consent and approval of the traction company, erected semaphores and a derailing apparatus on both lines. At or near the intersection there were four levers which could only be thrown in a certain order. The first operated a semaphore danger signal on the tracks of the traction company 1,700 feet from the crossing near a place called the Five Corners; the second placed a signal against the traction company 300 feet from the crossing and opened a derail on the rails of the traction company 100 feet from the crossing, which would throw the car off the track and on the ground astride of one of the rails; the third closed a derailing apparatus on the tracks of the railway company 300 feet from the crossing; the fourth dropped a danger signal which stood against the railroad some distance further

Schulk v. Joliet & Southern Traction Co., 154 Ill. App. 108.

from the crossing. As the traction cars ran often, and the railway company's track was used but seldom and was built last, it was arranged between the two companies that these signals should regularly remain at safety to the traction company and at danger to the railway company, and when the railway company wished to cross the traction company's tracks the men of the railway company should change the signals. On the day of the injury a train composed of thirty-seven cars and an engine of the railway company on which appellee was the fireman, stopped about a mile southwest from the crossing. The engine was detached from the train and ran forward to the derailing appliance 300 feet from the crossing. From there a brakeman named Hoot went forward to the signal apparatus at the intersection and the engine returned to the train. When the engine reached the train, the brakeman turned the signals and derailing apparatus against the traction cars and then released the derail and semaphores which stood against the train on the railway company's track. The railway train then started towards the crossing; a traction car approached the crossing from the southeast running at a rate of from 30 to 35 miles per hour down grade. The traction company's car ran off the track at the derail and ran over the intermediate 100 feet between the derail and the crossing and onto the track of the railway, but before it got over it was struck by the railway train and carried some 200 feet into an adjoining field where the engine left the track and turned over, seriously injuring appellee. The traction company claims that the accident resulted from the negligence of the railway company, and the railway company insists that the accident resulted from the negligence of the traction company or of a fellow-servant of appellee. The motorman of the traction company car testified that the distant semaphore was not set against him when he passed it;

that the near semaphore is fifty feet from the crossing; that when he got within fifty feet of the derail he saw it was set against him and looked to the left and saw the train and tried to stop his car by reversing the power but he was unable to stop the car and it ran off the derail onto the ground and over to and upon the track of the railway company; that from the time he passed the distant semaphore he did not look to the left in the direction the train came from; that there was nothing within 1,000 feet of the railroad to prevent him from seeing the train coming from the south within half a mile of the crossing if he had looked but he did not look and he did not see any person at the crossing. He also testified that the car was running at ten or twelve miles an hour and at that rate it would require 600 feet to bring the car to a stop using all the emergency appliances at his command.

Passengers on the traction car looking out of the windows testified that they saw the freight train approaching the crossing for about a quarter of a mile before it reached the crossing; and that the traction car was going from twenty to twenty-five miles an hour. One passenger testified that he saw the train approaching the crossing from the left from the time the traction car passed the Five Corners. Hoot, the brakeman, testified that before throwing the semaphore he looked both ways, saw the danger signal go up when he threw the levers, and that there was no street car in sight when he threw the signals which gave the right of way to the railroad company; that when he first saw the car it was getting up to the top of the hill at the Five Corners and that it came very rapidly, thirty or forty miles an hour; that the distant danger signal was up when the traction car passed it; that after he threw the signals he went across the road and it was five or six minutes before the accident; that he heard the traction company's car approaching and gave no further attention until it got

within about 200 feet of the crossing when he saw it was not going to stop and began to make motions with his arms to try to stop the car.

The object of the derailing system is to throw the car off the track so that it would not run over the crossing in front of a train on a railway track; the derail on the railway company's track was always set at danger and the train could not cross the traction company's track without first setting the signals at danger on the traction company's track and setting the derail so that it would derail the traction car; and the derail on the railway company's track could not be set so that a train could go across the traction company's track until the danger signals had all been set against the traction company and the railroad semaphore was set at safety for the railroad train to pass; such is shown to be the construction of the derailing system. The object of the derailing is to protect the trains or cars on the system which is set at safety from being run into by equipment on the tracks which is set at danger. The derail is set to throw the equipment off the track and prevent it from running on the crossing in front of equipment on the tracks on which the signals are set at safety if the employes on the tracks set at danger disregard or fail to observe the danger signals.

The derail on the traction company's tracks it is apparent was not placed far enough from the crossing to be of any service, for the reason that the car when derailed still ran upon the crossing. It is contended on behalf of defendants that there is no proof that the derail was negligently constructed or maintained, —that that was a matter requiring proof by experts. We think the doctrine of *res ipsa loquitur* applies. The fact that the derail on the traction company's track did not serve the purpose for which it was constructed by derailing the car a sufficient distance away so that it could not run upon the crossing, is more effective proof than any theoretical proof that could

116    APPELLATE COURTS OF ILLINOIS.

Schulk v. Joliet & Southern Traction Co., 154 Ill. App. 108.

have been made by appellee. This derailing apparatus was constructed by the railway company with the consent and approval of the traction company. Defendants knew or ought to have known how far a traction car would run after being derailed before it would stop, and should have placed the derail so that cars would not have run on the crossing after being derailed. It is apparent that there was negligence in its being constructed too near the crossing, and both parties are liable for any damage resulting from its negligent construction or maintenance. The negligence alleged in the second count of the declaration was proved.

It is also contended by appellant railway company that the injury resulted from an assumed risk and that the judgment cannot be sustained for that reason. An employe assumes such risks as are matters of common observation, but when the danger to be avoided requires a knowledge of scientific facts an ordinary employe is not presumed to have knowledge of them and the rule of assumed risk has no application. Swift & Co. v. Fue, 66 Ill. App. 651; Wood on Master and Servant, 714; 20 Am. & Eng. Ency. of L. 121 (2nd Ed.). The appellee was making his third trip over this branch road when the accident happened. He knew of the derail but did not know until after the accident how far it was from the crossing nor that it was so close as to be dangerous. The argument of appellants, that theoretical proof by experts was necessary to show that the derail was too close to the crossing, is a refutation of their contention that appellee assumed the risk of its location and construction. There is no proof in the record that he was an expert in such matters. The appellee cannot be said to have assumed the risk of a dangerous condition of which he was ignorant.

Approaching the crossing the fireman was on the left side of the engine, the side away from that on which the traction car approached. It was the duty

of both the railway company and the traction company to have stopped their respective cars or trains to avoid injury to employes and passengers. The safety appliances of the derail and semaphore were set at safety for the train and it had the right of way. The brakeman who set the semaphore supposed the car would stop before reaching the derail. Whether the engineer on the side of the engine on which the car approached should have seen the car and stopped his train, although the appliances were set giving him the right of way at the crossing, was a question of fact. It is the rule that if a servant has been injured through the negligence of the master the fact that the negligence of a fellow-servant has also contributed to the injury will not relieve the master from liability. The doctrine that an action will lie by an employe against his master for an injury sustained through the negligence of a fellow-servant applies only to cases where the injuries complained of occur without the fault of the master. Where the negligence of the master is combined with the negligence of a fellow-servant in producing an injury, and neither is the efficient cause alone, the master is liable. Pullman Palace Car Co. v. Laack, 143 Ill. 242; C. & A. R. R. Co. v. House, 172 Ill. 606; Armour v. Golkowska, 202 Ill. 147; Missouri Malleable Iron Co. v. Dillon, 206 Ill. 155; Kennedy v. Swift & Co., 234 Ill. 611.

In view of all the evidence in the case, the jury could reasonably find that the distant semaphore was set against the traction car before it reached that point and that it was disregarded or not seen by the motorman, and that both defendants were guilty of negligence in constructing and operating the derailing apparatus on the street car line too close to the railroad track to answer the purpose for which it was designed.

It is insisted on behalf of appellants that there was error in the court not having given to the jury in some

instruction a definition of fellow-servant. The defendants did not ask for any instruction on that question; moreover the third instruction given on behalf of the railway company informed the jury that if the employes of the railway crew all or any one of them were negligent, and that such negligence, if any, was the only negligence of the railway company, then they could not find the railway company guilty. An instruction was also given telling the jury that if the engineer was negligent and if the accident was caused thereby, the railway company must be found not guilty. The same kind of an instruction was given with reference to the switchman. A similar one was given concerning any of the train crew. All employes of the railway company who possibly could be fellow-servants of the appellee were included in the instructions which were given at the request of appellant railway company and particularly applied to each of its employes; the jury were instructed that if the accident was caused by the negligence of any of them there could be no recovery. The instructions were much stronger in behalf of the railway company than any instructions that could be drawn defining fellow-servants.

It is also insisted that the court erred in refusing to give instructions directing a verdict for the defendants upon each of the five counts. The refusal of the court to instruct the jury to disregard certain counts in the declaration is not reversible error when there is one or more good counts to sustain the judgment to which the evidence is applicable. Olson v. Kelly Coal Co., 236 Ill. 502; Swift & Co. v. Rutkowski, 182 Ill. 18; Eldorado Coal and Coke Co. v. Swan, 227 Ill. 586; I. C. R. R. Co. v. Foulks, 191 Ill. 57; Klofski v. Railroad Supply Co., 235 Ill. 146.

Some of the instructions given on behalf of the traction company it is claimed by the railway company were more favorable to the traction company than they were entitled to. We fail to see where the railway

company can assign error against the appellee because of any error that may have been favorable to a co-defendant when the defendant assigning error is not affected thereby.    A party may only assign error which injuriously affects his rights.    Schwartz v. Ritter, 186 Ill. 209.

The negligence alleged in the construction and operation of the derailing system is averred against both defendants and is sustained by the proof.    When there is concurrent negligence alleged and proved a verdict may be sustained against both defendants.    In actions of tort a verdict and judgment against any one of the defendants which the proof justifies will be sustained.    Chicago City Ry. Co. v. Smith, 226 Ill. 178.

It is also insisted the verdict is excessive.    In view of the wages the appellee was earning, his age, thirty years, and the serious nature of the injuries he received which will probably prevent him from ever hereafter performing work of the kind he had been engaged in for five years, we cannot say the judgment is excessive.    Finding no error in the case the judgment is affirmed.

*Affirmed.*