### Michael Colesar, Appellee, v. The Star Coal Company, Appellant.

### Gen. No. 5262.

1. Instructions—*when giving of upon issue not in cause will not reverse.* Held, that the giving of an instruction upon an issue not in the cause did not constitute ground for reversal as no harm could have resulted, there being no evidence to support such issue.

2. Instructions—*when upon proximate cause properly refused.* An instruction upon this subject which would tend to lead the jury to believe that the immediate cause of an injury was necessarily the proximate cause thereof, is properly refused.

Action in case for personal injuries. Appeal from the Circuit Court of La Salle county; the Hon. S. C. Stough, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 21, 1911.

Boys, Osborn & Griggs, for appellant.

Lucey & Larkin and Duncan, Doyle & O'Connor, for appellee.

Mr. Presiding Justice Willis delivered the opinion of the court.

Appellee was a coal miner in a mine known as No.

4 at Kangley, Illinois, operated by appellant. About the time he went to work on the morning of November 14, 1907, there was an explosion of gas in the roof of the entry near him and he was thereby injured. He brought this suit to recover damages for the injury so sustained, and had a verdict and a judgment for $10,000 from which the company appeals. The case went to the jury on the three counts of the amended declaration, the second, third, fifth and sixth additional counts, and the second further additional count, and the plea of not guilty. The several counts were very full in their averments, much of which we omit. The first count set up the duty of appellant under the 18th section of the Mines and Miners Act, and charged that appellant wilfully neglected to enter the mine before its miners were permitted to enter and examine the condition of its mine and to make a record in a certain book kept for that purpose of the condition of the mine on that day before the miners entered the shaft, and that in consequence of such wilful negligence the air current under which appellee passed in going to his place of work was not traveling in its proper course, as a result of which there was a dangerous accumulation of gases in said passageway, of which the plaintiff was unaware, which became ignited from a certain lamp of a certain miner and thereby the explosion was caused and he was injured. The second count was similar, except that it charged that the air current in said passageway was not traveling in a proper quantity. The third count was similar, except that it charged the duty of appellant to inspect and observe whether there were any recent falls or obstructions in its rooms or roadways, or accumulations of gas, etc., and to note the same in a book kept for that purpose before permitting its employes to enter the mine, and that appellant wilfully and negligently made default, in consequence of which while he was passing along a certain passageway, going to his

place of work, there was a recent hole in the roof of the mine over said roadway which emitted gas, which condition appellant wilfully failed to note in said book, thereby causing a dangerous accumulation of gas in said roadway, of which plaintiff was unaware, which gas became ignited from a certain lamp of a certain miner and thereby an explosion was caused, and appellee was injured. The second additional count charged common law negligence in permitting a dangerous accumulation of gas at said hole in said roof over said passageway, and said explosion. The third additional count was similar to the second additional count, and charged common law negligence in permitting a hole in the roof to remain without danger notices posted concerning said dangerous gases, and wilful and negligent failure to note said conditions in the book before the employes were permitted to enter, and to report such accumulations of gas to the mine manager or pit boss, and the explosion and injury resulting therefrom. The fifth additional count charged common law negligence in permitting said dangerous accumulation of gas in said passageway, and the explosion and injury. The sixth additional count charged common law negligence in negligently permitting smoke and explosive gases to accumulate in the roadway in consequence of which negligence the explosion and injury occurred. The second further additional count charged that appellant wilfully and negligently permitted a certain air passageway to cave in and fill up so as to obstruct and shut off the air current in the mine at about the place where appellee was going to his work, and on account of such obstruction of the air passageways the air current was cut off and obstructed and dangerous, and explosive gases accumulated and were permitted by appellant to remain without any notice or warning to appellee, in consequence of which wilful negligence said accumulated gases were exploded by a certain lighted lamp

carried by a certain miner as appellee was going to his work. The common law counts charged that appellee was exercising due care for his own safety.

The proof shows that this mine was operated by the long wall system. It was circular in form. The face of the coal was at all points nearly equally distant from the bottom of the shaft. The miners worked in what were called rooms, consisting of a certain number of feet along the face of the coal. The coal was only two and a half or three feet thick and it was therefore necessary to take down two feet or more of the shale rock overlying the coal in the entries, to obtain a sufficient height to move the cars. This rock was piled along the sides of the entries, and constituted the "buildings." The dirt and refuse from the mine was thrown back of the "buildings" and was called "the gob." A settling process, termed "squeezing" commences immediately after the coal is taken out, and continues until the roof has firmly settled upon the "buildings" or "gob." During this process, the rock overlying the coal frequently cracks, and sometimes portions of it fall. Black slate overlies the stratum of shale or substance above the coal. Gas comes from the slate into the mine through these cracks, and may continue to do so for some time, or may disappear in a few days. When this gas is pure, it will not explode, but when mixed with some seven to eleven parts of air, it will explode. During November, 1907, the air current used in ventilating this mine passed through an entryway about 120 feet long, known as the second left off the straight east. About two months prior thereto, a part of the roof in the entryway in question had fallen leaving a hole about four feet deep in the middle, sloping down from above to the natural roof at the ends and sides, which hole was ten or twelve feet long, and five feet wide. It was timbered immediately after it fell, and a short time thereafter gas was discovered therein, and a canvas curtain was then

hung across the entryway under the hole, so that the air current would pass over the top and take the gas out of the hole. On the morning of November 14, 1907, appellee went into the mine between 6:30 and 6:50 o'clock, carrying an ordinary miner's lamp, and passed under this curtain, in going to his place of work at the end of this entryway. Shortly thereafter Parsons, a miner who worked in a room next to appellee, came down the entryway. He kept his tool box within two or three feet of the curtain, at the side of the entryway, and there changed his clothes each night and morning, each time reaching for and replacing the key to his box, which he kept on one of the timbers in the hole in question. On this morning in question, he had an ordinary miner's lamp in his cap, and stepped on some dirt at the side of the roadway to reach for his key, when an explosion occurred. Appellee was about ten or twelve feet inside the curtain, and, according to the testimony introduced by him, he was blown by the force of the explosion over the top of the coal car that was standing in the entryway, and fell on his back on the ground between the rails, and afterward the car was blown on top of him.

For some time after the canvas curtain had been put up it had so controlled the air current that the gas had been removed from the hole. Though the evidence is conflicting, we conclude the jury was warranted in finding that the greater weight of the evidence showed that recent falls of rock had obstructed this air current, and that during the night preceding the explosion the current of air had been weaker than the law required. We conclude that there was no error in submitting the cause to the jury, and that the jury was warranted in finding that gas accumulated in the hole because the air current was weak, and that the explosion occurred through appellant's wilful disregard of the requirements of section 18 of the Mines and Miners Act.

Among the conditions which appellee claims were

produced by this injury was the presence of blood and pus in the urine. There was testimony that this might be due to stone in the kidney, and that this condition was present so soon after the accident that it could not have been due to stone in the kidney produced by the accident, but if there were such stone in the kidney at the time it must have been there at the time of this accident. Thereupon X-ray pictures of appellee's body in the region of the kidneys were taken, and the plates were offered in evidence after proof that they were correct representations of the conditions shown by the X-ray. It appears that from them alone, nothing could be observed, and that it was necessary to put the plates into an illuminating box accompanied by certain apparatus to make the picture visible. Illuminating boxes were not brought into court, nor did appellant make any objection because they were not produced. It is argued that the introduction of the plates was incompetent, but as the jury did not discover anything by looking at them, we think their admission did no harm. It is argued that the testimony of the physician who took the skiographs that they showed no stone in the kidney was incompetent. The objection to it was general only, and therefore properly overruled. Preston v. Davis, 112 Ill. App. 636. If it had been based upon the special ground that the illuminating boxes should have been produced that the jury and opposite counsel might see the pictures, we must assume that that course would have been pursued. Photographs taken by the X-ray process are admissible in evidence, after proper preliminary proof of their correctness and accuracy has been produced. 22 Am. & Eng. Enc. of Law, 755; Chicago & Joliet Electric Railway Company v. Spence, 213 Ill. 220; Chicago City Railway Company v. Smith, 226 Ill. 178.

The first instruction given at the request of appellee is slightly incorrect. It states the duties of appellant under a part of section 18 of the Mines and Miners

Act, and amongst these duties is the duty of the mine examiner to measure, with an instrument for that purpose, the amount of air passing in the last cross cut or break through each pair of entryways, or in the last room of each division in a long wall mine, and it tells the jury that if they believe that appellee was injured and thereby sustained damages as stated in the declaration, and that said injury and damages were occasioned by the wilful failure of appellant to comply with the foregoing provision of law set forth in this instruction, they should find the defendant guilty. The count of the declaration which charged a failure to measure the amount of air passing had been withdrawn, and there was no count remaining in the declaration upon a failure to measure the air, and it is urged that therefore this instruction was erroneous. There was no proof of any failure to measure the air, and therefore we conclude this feature of the instruction did not harm appellant. The statute was not exactly quoted in the instruction. One comma was wrongly inserted, and the word "of" was omitted. We are of the opinion that that defect was too slight to disturb the verdict. Complaint is made of the tenth instruction given at appellee's request, because it authorized a recovery for permanent injuries. There was evidence that appellee had been permanently injured, and therefore the instruction is not justly subject to that criticism. It is argued that the court erred in refusing the 32nd instruction requested by appellant. The substance of it was that, even through appellant was guilty of a wilful violation of the statute, as charged in the declaration, still if the jury believed that the immediate cause of appellee's injury was the lighting of the gas by the witness Parsons, and that the wilful acts of the defendant were only the remote cause of appellee's injury, then they should find the defendant not guilty. This was calculated to mislead the jury. The immediate cause of plaintiff's injury was the explosion, and that was caused by the gas be-

ing lighted from the miner's lamp on the cap of the witness Parsons. But that did not make appellant any the less responsible for the presence of the gas in the hole, if that presence was due to a failure to comply with the statute in regard to the quantity of air passing through that hole. The jury would be likely to understand that the presence of the gas and the lack of a sufficient current of air were only the remote causes of the explosion, and no such inference could justly be drawn from the evidence. Moreover, all that was material to appellant in this instruction was contained in the 28th instruction requested by appellant, as modified and given. Appellant contends that the court erred in refusing to instruct the jury to find it not guilty as to particular counts of the declaration. His argument on that subject is answered by Scott v. Parlin & Orendorff Co., 245 Ill. 460; and Klofski v. Railroad Supply Co., 235 Ill. 146.

Appellant contends that the damages are excessive. The appellee alone knows how he was injured, and his testimony indicates that he was confused. He testified that he was thrown over the car ahead of him, and that then the car was thrown so that the front wheels rested upon him; that he crawled out from under it unaided, found his lamp, which was still burning, crawled to the shaft and went up and home, taking hold of fences as he went. That night he was examined by a physician, who found no abrasion of the skin, broken bones, or visible injuries, but found a swollen condition in the region of the abdomen. He was injured November 14, and was removed to a hospital November 17, where he remained until November 30, when he was taken home and remained in bed until April 14, following. He complained of great soreness in the abdominal region, and shortly after the injury blood was found in his urine, and still later a microscopic examination revealed pus. An examination made shortly before and during the trial showed

blood in the urine. The appearance of his skin indicated poison in his system. A physician testified that he was uncertain as to what was the matter with appellee, but that apparently he was suffering from a rupture of the kidney or of the structures around the kidney; that he was unable to work, and that his injuries were likely to be permanent; that the only method of ascertaining what was the matter with him was to open the trunk and region of the kidneys, and that such an operation in his condition might prove fatal. He has been unable to walk at times, and has had difficulty in going up stairs, and has not worked any since the accident. While the judgment is for a large sum of money, yet upon a careful re-examination of the evidence upon the subject of the extent of appellee's injuries, upon this hearing, we are unable to find any proof from which we can say that appellee's present serious condition is due to any other cause than the injuries he received at the time of this explosion.

The judgment is therefore affirmed.

*Affirmed.*