## George W. Davis, Appellee, v. Michigan Central Railroad Company, Appellant.

## Gen. No. 24,620.

1. MASTER AND SERVANT, § 147*—*what is duty as to providing automatic couplers under Federal Safety Appliance Act.* The Federal Safety Appliance Act, relating to automatic couplers, imposes an absolute duty on railroad companies to provide couplers which will couple on impact, and performance of the duty imposed by the act cannot be evaded by proof that a railroad company has used ordinary care in the selection of couplers or in ascertaining their fitness for use.

2. MASTER AND SERVANT, § 715*—*when compliance with Safety Appliance Act as to automatic couplers is question for jury.* Evidence *held* to present a question for the jury whether a railroad company had provided couplers on cars coupling automatically on impact, in compliance with the Federal Safety Appliance Act.

3. MASTER AND SERVANT, § 833*—*when admission of evidence that other safety devices in coupling cars were in use not reversible error.* In an action by a railroad switchman against a railroad company for personal injuries, due to his foot being crushed between a caboose and a car while he was trying to kick a drawbar into place so that the cars could couple, in which the issue was whether the cars would couple automatically by impact, as required by the Federal Safety Appliance Act, the admission of evidence tending to show that at the time of the accident there were in use by railway companies devices which would cause a drawbar out of alignment to drop back into alignment, was not reversible error.

4. MASTER AND SERVANT, § 833*—*when admission of evidence as to other instances when drawbars were out of place not reversible error.* In an action by a switchman against a railroad company to recover for personal injuries, due to his foot being crushed between a car and a caboose while he was trying to kick a drawbar into place so that the cars, which ordinarily coupled on impact, would couple, the admission of evidence tending to show other instances when drawbars were out of alignment was not reversible error.

5. MASTER AND SERVANT, § 611*—*when evidence admissible as to effect on efficiency of car couplers, when drawbars were in certain position.* In an action by a switchman against a railroad

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

company to recover for personal injuries, due to his foot being crushed between a car and a caboose while he was trying to kick a drawbar into place, evidence as to the effect on efficiency of the couplers, which ordinarily coupled on impact, where the drawbars were in the same position as on the colliding cars, was admissible.

6. MASTER AND SERVANT, § 147*—*necessity of lateral play in drawheads in drawbars.* Some lateral play must be allowed in drawheads in drawbars used in couplers required by the Federal Safety Appliance Act to couple automatically on impact.

7. APPEAL AND ERROR, § 1467*—*when admission of improper evidence not reversible error.* A judgment will not be reversed for the reason that irrelevant or incompetent evidence was admitted on the trial, where it is evident that no injury resulted therefrom to an objecting party.

8. EVIDENCE, § 265*—*when memorandum book properly excluded.* It is not improper to exclude a memorandum book containing measurements, where the witness has testified as to the measurements, using the memorandum book for the purpose of refreshing his memory.

9. APPEAL AND ERROR, § 1533*—*when technical error in instruction not ground for reversal.* In an action by a switchman against a railroad company to recover for personal injuries, due to his foot being crushed between a car and caboose while he was trying to kick a drawbar into place, the use of the word "cannot" instead of the word "can" in an instruction that it was unlawful for a common carrier to use a car in interstate traffic not equipped with couplers which would couple automatically by impact and "which cannot be uncoupled without the necessity of men going between the ends of cars," held not reversible error, where the only issue was the alleged failure of the couplers to couple on impact, and other instructions told the jury that there could be no recovery unless the evidence showed that the couplers would not couple on impact.

10. DAMAGES, § 133*—*when verdict not excessive.* A verdict for $5,000 for the loss of the second, third and fourth toes of the left foot of a railroad switchman, 31 years of age, held not excessive.

McSURELY, J., dissenting.

Appeal from the City Court of Chicago Heights; the Hon. CHARLES H. BOWLES, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed March 10, 1919. Rehearing denied March 24, 1919.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

WINSTON, STRAWN & SHAW, for appellant; J. SIDNEY CONDIT, of counsel.

CHARLES C. SPENCER, for appellee.

MR. PRESIDING JUSTICE DEVER delivered the opinion of the court.

Plaintiff, George W. Davis, brought suit in the City Court of Chicago Heights against the defendant, Michigan Central Railroad Company.

The jury which tried the case returned a verdict in plaintiff's favor for the sum of $7,000. The court required a remittitur of $2,000, and judgment was entered against the defendant for the sum of $5,000. The defendant brings the case by appeal to this court.

The case was tried on the second and third counts of a declaration consisting of three counts. These counts alleged in substance that the defendant, in violation of the Safety Appliance Act, hauled and permitted to be hauled and used on its line in interstate traffic certain cars which would not couple automatically by impact, and that it negligently and in violation of said law moved one of said cars while the couplers, drawbars and other coupling apparatus of said car were out of order, improperly adjusted and with the drawbars thereof turned to one side so that the car would not couple automatically by impact and so that it was necessary for the plaintiff, in the course of his employment, to go between the cars to make a coupling; that the injury to plaintiff resulted from this wrongful conduct of the defendant.

The evidence discloses that plaintiff, 31 years old, was an experienced switchman and had been in the employ of the defendant for about 5 years before the date of the accident; that it was raining on the day of the accident and he had on rubber boots and a rubber coat. He was the "rear man" of a switching crew, which, on the day in question, had brought cars from

Argo, Illinois, to the yards of the Chicago Junction Railway. When the train of cars reached the yards near Loomis street the engine and caboose were cut off from the other cars and the caboose "kicked" back onto the main line, which ran north and south. The caboose stopped on the track a short distance south of the 47th street viaduct; the engine then went back, coupled onto other cars on another track, moved them over a switch and started to move them so that a refrigerator car at the north end of the line of cars could be coupled to the caboose. Plaintiff went to the caboose to make the coupling. The plaintiff testified that as the refrigerator car approached the caboose he saw that the drawbar on the refrigerator car was pointed towards him as he stood west of the couplers; that the drawbar on the caboose was directed slightly towards the east; that in such position it was evident to plaintiff that the cars would not couple on impact; that in order to couple them plaintiff was required to go between their ends and move the drawbar of the refrigerator car so that it would point directly north; that in so doing plaintiff took hold of the grab iron on the refrigerator car with his right hand and put his left foot against the drawbar and pushed it over towards "center"; that in so doing his foot was caught and crushed between the cars.

Plaintiff testified that no devices or apparatus had been provided for moving the drawbar back to its center and that there was no way of doing this except by kicking or pushing it over with his foot or hand.

It is not disputed that at the time of the accident the defendant corporation was engaged in interstate commerce; it is urged by the defendant that the Safety Appliance Act relating to automatic couplers imposes an absolute duty on railway companies to provide couplers which will couple on impact, and that the performance of the duty imposed by the act cannot be evaded by proof that a railway company has used ordinary care in the selection of couplers or in ascer-

taining from time to time their fitness for use. *Minneapolis & St. L. R. Co. v. Gotschall*, 244 U. S. 66 [14 N. C. C. A. 865]; *Louisville & N. R. Co. v. Layton*, 243 U. S. 617.

In the case of *Chicago, B. & Q. Ry. Co. v. United States*, 220 U. S. 559, the court discussed at length the duty imposed by the act upon railway companies, and it held that "the obvious purpose of the legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it."

The cases cited by counsel for defendant amply support their contention, and they urge that as a necessary consequence of the holdings in these cases the trial court erred in admitting certain testimony of witnesses for plaintiff.

Witnesses for defendant testified that just after the accident they examined the couplers on the two cars and found that they were coupled and that so far as they noticed were in good order and repair. It became, therefore, a question of fact for the jury whether the defendant had provided couplers on the cars in question which complied with the requirements of the federal act.

In *Atlantic City R. Co. v. Parker*, 242 U. S. 58, the court said:

"If there was evidence that the railroad failed to furnish such 'couplers coupling automatically by impact' as the statute requires (*Johnson v. Southern Pac. Co.*, 196 U. S. 1, 18, 19), nothing else needs to be considered. We are of opinion that there was enough evidence to go to the jury upon that point. No doubt there are arguments that the jury should have decided the other way. Some lateral play must be allowed to drawheads, and further, the car was on a curve, which, of course, would tend to throw the coup-

ler out of line. But the jury were warranted in finding that the curve was so slight as not to affect the case, and in regarding the track as, for this purpose, a straight line. If couplers failed to couple automatically upon a straight track, it at least may be said that a jury would be warranted in finding that a lateral play so great as to prevent coupling was not needed, and that, in the absence of any explanation believed by them, the failure indicated that the railroad had not fully complied with the law."

We think it apparent that the issue in the case with reference to the couplers was simply whether the couplers in question would couple automatically by impact, and that the trial court was not authorized to admit any evidence tending to show the condition of other couplers used by the defendant and others, or the practice or custom of the defendant with relation thereto.

The plaintiff testified that he knew there was some play in the drawbar on the refrigerator car, but that he did not know how much; that the drawbar on the caboose was turned towards the east and that the drawbar on the refrigerator car, as it approached the caboose was "clear over to the west"; that he saw that "they were not going to make" and that he knew "it would not couple." The question which the jury was called upon to determine was whether the couplers on the car in question would couple automatically on impact. The plaintiff was in a position to know of the extent of the play of the drawbars, and whether his judgment was sound, or whether his relation of circumstances attending the accident was truthful, were questions for the jury.

While we think the court erred in permitting the plaintiff and another witness to testify that at the time of the accident there were in use by railway companies devices which would cause a drawbar out of alignment to drop back into alignment, we do not think that the error was sufficiently serious to justify a reversal of the judgment. This may be said also of tes-

Davis v. Michigan Central Railroad Co., 213 Ill. App. 259.

timony admitted which tended to show other instances than the one in question when drawbars were out of alignment. Certain witnesses, however, testified that in their opinion the couplers on the cars in question would not have coupled with the drawbar in the position testified to by the plaintiff, and it was proper for these witnesses to testify as to what they had noticed or had been taught by their experience as to the efficiency of coupling devices when the drawbars were in certain positions. In determining the quality of the couplers in question, it was permissible to show the effect on the efficiency of the couplers with drawbars in the positions of those in question at the time plaintiff sustained his injuries.

The evidence tends to prove that some play in the drawbars was required so as to permit the operation of trains of cars on curves. This question is discussed in *San Antonio & A. P. Ry. Co. v. Wagner*, 241 U. S. 476, wherein the court said, in a case where a defendant had attempted to set up that there was no kind of automatic couplers constructed or that could be constructed which would couple automatically at all times without adjustment because of lateral play necessary to enable coupled cars to round curves, that:

"The fact that the coupling pin on the box car failed to drop as it should have done at the first impact, and required manipulation in preparation for the second impact, together with the fact that the drawbar on the engine was so far out of line as to require adjustment in preparation for the second impact, and the opinion evidence, being sufficient to sustain a finding that the equipment was defective. The jury could reasonably find that the misalignment of the drawbar was greater than required to permit the rounding of curves, or, if not, that an adjusting lever should have been provided upon the engine as upon the car, and that there was none upon the engine."

The opinion evidence objected to in the case at bar was admissible in so far as it tended to aid the jury in determining whether the lateral play, if there was

such, in the drawbars in question was of such character as would unnecessarily interfere in the effective operation of the couplers as required by the act, and it was not improper to permit these witnesses to testify as to what their experience had been with reference to the subject about which they undertook to express an expert opinion.

As stated in the *Parker* case, *supra,* it is evident that "some lateral play must be allowed to drawheads." Otherwise stated, it became the province of the jury to determine whether the defendant had in fact failed to comply with the Safety Appliance Act as charged in the declaration, and it was competent for both defendant and plaintiff to show by proper evidence that the drawbars and couplers in question were or were not in proper alignment and so constructed and adjusted as that the couplers would couple automatically by impact. The duty to so couple is imposed by the federal law. This fact, however, did not authorize the court, as stated, to admit evidence tending to show the character of other devices used by defendant or other railway companies at different times and upon cars other than the ones in question. It is our opinion that the plaintiff proved more than was necessary to make out his case.

A judgment will not be reversed for the reason that irrelevant or incompetent evidence was admitted on the trial where it is evident that no injury resulted therefrom to an objecting party. *Ringering v. Cleveland, C., C. & St. L. Ry. Co.,* 161 Ill. App. 43, 46.

As we understand the issue, it was not contended on the trial, nor is it urged here, that the defendant's liability depends upon any other circumstances than its failure to comply with the federal law. If this be so, then it was immaterial whether other devices or safer appliances could have been provided for the cars in question, but, assuming this, it is difficult to see how the admission of such evidence could have prejudiced the defendant. Under the decided cases the plaintiff

was only called upon to prove the failure of the particular couplers in question to couple automatically by impact, and when he undertook to show by his evidence that other devices were obtainable which would have complied with the federal law, he assumed a burden that the law did not impose upon him.

The court did not err in excluding the memorandum book kept by a witness for defendant. The witness was permitted to testify to certain measurements, and in so doing he was allowed to use the memoranda entered in the book to refresh his recollection concerning the matters as to which he testified.

There was technical error in the giving of an instruction at the request of plaintiff which told the jury that it was unlawful for any common carrier to use a car in interstate traffic not equipped with couplers which would couple automatically by impact and "which cannot be uncoupled without the necessity of men going between the ends of cars." It is conceded that the word "cannot" in the instruction should be "can." As given, the instruction told the jury that plaintiff would be liable if the couplers in question could be uncoupled without the necessity of men going between the cars. It is evident that this was a typographical error. There was no claim made at the trial, nor is there here, of any injury resulting from the failure of the cars to uncouple. The issue at the trial was the alleged failure of the couplers to couple on impact, and the evidence of certain witnesses shows that the cars were properly coupled immediately after the accident occurred. Under the circumstances, this error could have worked no injury to the defendant.

Other instructions definitely told the jury that there could be no recovery unless the evidence showed that the couplers would not couple by impact. *Colesar v. Star Coal Co.,* 160 Ill. App. 251.

The verdict of the jury and judgment of the trial court in favor of the plaintiff is large. There is evi-

dence in the record which tends to show that as a result of the accident the plaintiff lost the second, third and fourth toes of his left foot; that his injury is in some degree permanent and that he has suffered, and at the present time does suffer, from pain in and limitation of the use of his left foot. We do not think, however, that the verdict of the jury is so large as to indicate that it was moved by passion and prejudice. *Wagner v. Chicago, R. I. & P. Ry. Co.*, 200 Ill. App. 305; *Davidson v. Montgomery Ward & Co.*, 171 Ill. App. 355.

Other errors are complained of by the defendant as to which we think no reversible error was committed.

The judgment of the trial court will be affirmed.

*Affirmed.*

MR. JUSTICE McSURELY, dissenting. I think the amount of the judgment is excessive.