THE CHICAGO CITY RAILWAY CO. *v.* ISAIAH C. SMITH,

and

THE CHICAGO AND GRAND TRUNK RAILWAY CO. *v.* SAME.

*Opinion filed February 21, 1907—Rehearing denied April 4, 1907.*

1. RAILROADS—*company must use care consistent with practical operation of road.* An instruction requiring a railroad company to exercise the highest degree of care for the safety of passengers, "consistent with the practical operation of its road," is not erroneous in failing to qualify the word "consistent" with the word "reasonably."

2. INSTRUCTIONS—*when Supreme Court's approval of instruction settles principle of law announced.* Approval by the Supreme Court of an instruction stating an abstract rule of law conclusively determines the proposition of law to be as therein stated, where the only objection to the instruction is that it does not state such rule of law correctly.

3. SAME—*terms "practical operation of its road" and "practical prosecution of its business" mean the same thing.* An instruction stating the duty of a carrier to its passengers is not erroneous or misleading in using the term "practical prosecution of its business" instead of the customary term "practical operation of its road," as the two terms mean substantially the same thing.

4. SAME—*instruction construed as to loss of profits in business.* An instruction authorizing allowance to plaintiff of the *value of the time* which he lost by reason of his injuries is not open to the construction that the jury might thereunder allow him for *loss of profits* in his business, particularly where another instruction expressly excludes such profits.

5. SAME—*when an instruction does not authorize recovery for mere mental suffering.* An instruction authorizing the jury, in estimating plaintiff's damages, to consider, among other things, "to what extent, if any, he has been injured or marred in his personal appearance, and to what extent, if any, he may have endured physical and mental suffering as a natural and inevitable result of such injury," is not subject to the objection that it authorizes a recovery of damages for mere mental suffering not connected with any physical injury.

6. SAME—*when alleged error in giving instruction is waived.* Alleged error in giving certain instructions is waived where such action was not mentioned among the specific reasons contained in

the written motion for new trial, even though such written motion closes with the words, "and for various other errors apparent on the face of the record."

7. EVIDENCE—*when X-ray photographs are properly admitted.* X-ray photographs of plaintiff's injury are properly admitted in evidence where the witness testifies that he is a physician and surgeon of experience in the practice of his profession and in the making of X-ray photographs, that he was competent to make the same, that he made the original negatives and prints, and that they are correct representations of what they purport to be.

8. SAME—*what held to be improper cross-examination.* It is not proper, in a personal injury case, to ask, on cross-examination of a medical witness for the plaintiff, whether it was not the principal part of his profession to be in consultation with attorneys, to hunt up claims or secure them and have an arrangement for contingent fees, since such cross-examination should not be extended to cases having no connection with the one on trial.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is an action on the case brought by Isaiah C. Smith against the Chicago and Grand Trunk Railway Company (hereinafter called the railway company) and the Chicago City Railway Company (hereinafter called the street railway company) to recover damages for personal injuries received on July 17, 1893, which resulted from a collision between a passenger train on the railway company's tracks and a street car on which Smith was a passenger, at a point on Halsted street near its intersection with Forty-ninth street, in the city of Chicago. The case was first tried in 1896 and a judgment was rendered against both the appellants. Upon appeal the Appellate Court dismissed the appeal for irregularities in the record. (*Chicago City Railway Co.* v. *Smith,* 82 Ill. App. 305.) The case was then taken to the Appellate Court on a writ of error and the judgment was reversed and the cause remanded. (*Chicago City Railway Co.* v. *Smith,* 92 Ill. App. 153.) Upon the second trial in

the court below a verdict of $35,000 was rendered, upon which the court, after requiring a *remittitur* of $20,000, rendered judgment. This judgment has been affirmed by the Appellate Court for the First District, and both of appellant companies have prosecuted a further appeal to this court.

Forty-ninth street runs east and west and is crossed by Halsted street, which runs north and south. There are four railroad tracks in or near Forty-ninth street at the point where it intersects Halsted street. Two of these tracks are on the north side of the center line of Forty-ninth street and were being used by the Chicago Junction Railway Company. These two tracks were about seven feet apart. On the south side of Forty-ninth street are two other tracks which were being used by the railway company, appellant herein. These two tracks were also about seven feet from each other, and were from sixteen to thrity feet south of the Chicago Junction Railway Company's tracks. The north track of the railway company was used for its west-bound trains and the south one for its east-bound trains. West of Halsted street these tracks ran straight for a considerable distance. A station house was located west of Halsted street and south of all of the tracks, and a gate tower was located in the space between these two sets of tracks, west of Halsted street. North and south of these four tracks were gates, which were operated from the switch tower, and when lowered stopped the travel over the crossing along Halsted street. The gates were under the control and management of a servant of the railway company, whose duty it was to lower the gates so as to exclude travel over the crossing when a train was approaching from east or west, and to keep them closed until the train had cleared the crossing. The switch tower was about eighteen or twenty feet high, thus affording the tower-man a commanding and unobstructed view of the railroad tracks. The only indication of the approach of trains provided by the railway company was by closing the gates. The street railway company operated a horse car line in Halsted street.

Appellee became a passenger on a south-bound horse car about a mile north of the scene of the accident. Upon reaching the north gate at Forty-ninth street, the gate being down, the car stopped. At that time there was a freight train standing upon the north track of the railway company, the caboose of which was several feet west of the west sidewalk of Halsted street, thus leaving the street clear but cutting off the view to the south-west. There were no other obstructions to prevent a person at the north gate from looking along the railway track for more than a mile. The conductor of the street railway car went ahead of the horses and passed the gate, and when it was raised he told the driver to "come on." The conductor walked a few feet ahead of the horses until he reached the south or last track of the railway company, when he discovered a passenger train coming rapidly from the west along the south track. He called to the driver to stop, but the driver applied the whip to his horses and attempted to cross the south track ahead of the passenger train, but failed to clear the south track, and the car in which appellee was a passenger was struck by the engine of the passenger train and appellee was severely injured.

The declaration contained three counts and charged separate acts of negligence against each of the appellants, and averred that appellee's injury resulted from the joint operation of the alleged negligent acts. The negligence charged against the street railway company was a failure to so run, manage and operate the car upon which appellee was a passenger as to safely carry appellee to his destination without harm or injury, and a failure to take proper precautions at the intersection at the crossing of the railway track to discover whether there was danger from a collision with passing trains upon the railway company's tracks. The negligence charged against the railway company is that of negligently and carelessly running its train at an unreasonable and unsafe rate of speed, and failing to close the gates or give other

warning of the near approach of the train at the intersection of the street car lines. Each of appellants filed a plea of not guilty.

WILLIAM J. HYNES, and WATSON J. FERRY, (MASON B. STARRING, of counsel,) for appellant the Chicago City Railway Company.

G. W. KRETZINGER, for appellant the Chicago and Grand Trunk Railway Company.

THEODORE G. CASE, MUNSON T. CASE, and SETH F. CREWS, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

It is contended that the court erred in giving instructions numbered 3 and 4. These instructions are as follows:

3. "The court instructs the jury that, so far as consistent with the practical operation of its road, it is the duty of a railroad company to exercise the highest degree of care and caution for the safety and security of passengers while being transported.

4. "Common carriers of persons are required to do all that human care, vigilance and foresight can reasonably do, consistent with the character and mode of conveyance adopted and the practical prosecution of the business, to prevent accidents to passengers riding upon their trains."

Instruction No. 3 is objected to by both appellants because it omits to qualify "consistent" with the word "reasonably," in the first line, and an argument is submitted which attempts to show that the words "consistent with the practical operation of the road" mean something more or less than the words *"reasonably* consistent with the practical operation of the road." This objection is without force. The instruction has been approved by this court as a correct proposition of law in *West Chicago Street Railroad Co.* v.

*Kromshinsky,* 185 Ill. 92, and the rule embodied in it has frequently received the sanction of this court. *Illinois Central Railroad Co.* v. *O'Connell,* 160 Ill. 636; *West Chicago Street Railroad Co.* v. *Johnson,* 180 id. 285; *Chicago, Burlington and Quincy Railroad Co.* v. *Mehlsack,* 131 id. 61; *Chicago and Alton Railroad Co.* v. *Byrum,* 153 id. 131.

While, as a general rule, the approval of an instruction in any given case means no more than that the instruction is not open to the objection there urged against it, where an instruction like the one now being considered announces an abstract proposition of law, and the only objection that can be raised to it is that it is not a correct statement of the law, if the approval of such instruction by this court does not settle the law as contained in the instruction, then there can be no such thing as settling a legal proposition when the same is presented to this court in an instruction. When a clear abstract proposition of law is presented to this court and is approved as a correct statement of the law, it must be assumed that the court has spoken advisedly and that all objections to the rule as announced have been considered. The instruction now under consideration defines the rule of law as to the degree of care a carrier owes to its passengers. As already shown, the rule has been unequivocally approved by this court frequently as a correct proposition of law without the qualification of "reasonably" before the word "consistent." The identical objection now being urged to the instruction under consideration was raised in the case of *Chicago City Railway Co.* v. *Pural,* 224 Ill. 324, and we there held that the qualification by the use of the word "reasonably" added nothing to the sense of the instruction and was unnecessary.

It is also further said that the third and fourth instructions should not have been given because they were not applicable to the case of the railway company. These instructions do not assume to state facts upon the finding of which a verdict is to be found against both appellants or either of them. Appellee was a passenger on the street car

and was not a passenger on the train of the other appellant. The jury must be credited with intelligence, and no one with fair intelligence could understand these instructions as having any relation to the case against the railway company.

The criticism made on instruction 4 because it uses the words "practical prosecution of its business" instead of the "practical operation of its road" is hypercritical. The two expressions convey substantially the same meaning.

Instruction No. 9 is objected to. This instruction relates to the elements of damages, and tells the jury, among other elements to be considered, "to what extent, if any, he [appellee] has been injured or marred in his personal appearance, and to what extent, if any, he may have endured physical and mental suffering as a natural and inevitable result of such injury," and also the value of any time the jury may believe, from the evidence, appellee has lost on account of such injuries. This instruction is alleged to be vicious (1) because there is no evidence in the record which authorized the jury to consider the marring of appellee's personal appearance as an element of damages; (2) because the instruction authorized a recovery for mere mental suffering not connected with physical injuries; and (3) because the allowance for loss of time, under the evidence, was misleading and erroneous. In regard to the first objection pointed out to this instruction, the evidence shows that appellee was more or less disfigured about his face, head and shoulder, and while it is true Dr. Wilder testified that he had examined appellee a short time before the trial and that appellee's ear that had been practically severed from his head had assumed its natural position, and that on close examination only the scars could be seen, and that there was only a partial limitation of the use of one arm, still, when all the evidence is considered, there is a substantial basis in it to warrant the instruction. The last objection to the instruction is based on the assumption that the jury were liable to be misled into awarding appellee damages for loss of profits

in his business as a speculator and scalper in live stock. There is no intimation in the instruction from which such inference can be drawn, and the objection thus urged cannot be sustained. All danger to appellants, if any was to be apprehended from the instruction in this regard, was obviated by instruction No. 22 given for appellants, which told the jury in plain words that appellee was not entitled to recover for any loss of business. The instruction in its entire scope is based on evidence in the record and is not subject to the objections urged against it.

The objection urged against the instruction in *Cullen* v. *Higgins,* 216 Ill. 78, is not insisted upon in this case.

Appellant the railway company insists in this court that the trial court erred in giving two instructions at the instance of the street railway company. Without deciding the right of one co-defendant to assign error upon an instruction given at the instance of another defendant when both are joined in an action on the case, and without considering whether the instructions complained of are open to the objection urged against them, we are of the opinion that the question respecting the giving of these instructions is not properly saved for review on this record. The railway company filed a motion for a new trial in the court below, in which it pointed out twenty-six specific reasons why a new trial should be granted, and in none of the points so filed is there any reference to the error of the court in giving the instructions of which complaint is now made. It was not until the assignment of error in the Appellate Court that the railway company sought to raise this question. The rule of practice in this State is, that where a party files a written motion for a new trial and specifies therein the grounds or points upon which he relies, all questions not embraced in the points so filed are waived. While it is true, as held in this court in *Illinois Central Railroad Co.* v. *O'Keefe,* 154 Ill. 508, that errors in giving or refusing instructions, when exceptions have been properly taken, are saved without a

motion for a new trial, still the rule is firmly established that when a motion for a new trial is made and the points relied on stated therein, all other points are thereby waived. (*Ottawa, Oswego and Fox River Valley Railroad Co.* v. *McMath,* 91 Ill. 104; *Hintz* v. *Graupner,* 138 id. 158; *West Chicago Street Railroad Co.* v. *Krueger,* 168 id. 586; *Illinois Central Railroad Co.* v. *Johnson,* 191 id. 594; *Kehl* v. *Abram,* 210 id. 218.) At the close of the written motion for a new trial the appellant railway company adds, "and for various other errors apparent on the face of the record." This cannot mean anything. It is wholly useless and serves no purpose. *West Chicago Street Railroad Co.* v. *Krueger, supra.*

We are asked to reverse this judgment because, it is said, the trial court erred in admitting in evidence certain X-ray photographs taken by Dr. Dennison for the purpose of showing the character of appellee's injuries. Preliminary to the introduction of these photographs Dr. Dennison testified that he was a post-graduate physician and surgeon and had had twelve years' experience in the practice of his profession in Chicago and was experienced in the matter of making X-ray photographs, and that he was competent to make correct X-ray views, and that he made the original negatives and the prints therefrom, and that the same were correct representations of what they purported to be. This preliminary proof was sufficient to authorize the reception of the photographs in evidence. What they proved or tended to prove, or whether they were impeached by the expert testimony introduced by appellants, were questions for the jury. The evidence of Dr. Dennison made a *prima facie* showing sufficient to justify the court in admitting them in evidence, and this is the only question involved before us. (*Chicago and Joliet Electric Railway Co.* v. *Spence,* 115 Ill. App. 465; *Same* v. *Same,* 213 Ill. 220; 22 Am. & Eng. Ency. of Law, —2d ed.—755.) There was no error in admitting the photographs in evidence.

On the cross-examination of Dr. Flood, a medical expert witness for appellee, counsel for appellants asked the following question: "Isn't it the principal part of your professional industry to be in consultation with attorneys, to hunt up these claims, or, whether you hunt them up or not, secure them, and in consultation with them have an arrangement with them for contingent fees?" To this question the court sustained an objection, and this ruling is assigned as error. Conceding appellants' right of cross-examination to discover the motives, feelings and prejudices of a witness, still we are not inclined to hold that there was any error committed in refusing to allow the cross-examination to be extended to other cases having no connection with the case then being tried. The objection to this question was properly sustained. (*Chicago and Eastern Illinois Railroad Co.* v. *Schmitz,* 211 Ill. 446.) There is nothing in the cases relied upon by appellants justifying the question propounded to this witness.

We have examined and considered appellants' assignment of error respecting the alleged misconduct of counsel for appellee during the trial, but have failed to find anything in the conduct objected to which calls for a reversal of this judgment. Other errors assigned and insisted upon and not herein discussed are such as the judgment of the Appellate Court precludes us from considering or are not of a character requiring a discussion in this opinion. Suffice it to say, that all matters urged in the briefs of both of these appellants have had our careful consideration, and we have reached the conclusion that there is no reversible error in this record.

The judgment of the superior court of Cook county, and the judgment of the Appellate Court affirming the same, are accordingly affirmed.            *Judgment affirmed.*