Albert Lee Wells, Plaintiff-Appellee, v. Gulf, Mobile & Ohio Railroad Company, a Corporation, Defendant-Appellant.

### Gen. No. 66–82.

Fifth District.

April 14, 1967.

Rehearing denied June 9, 1967.

Gillespie, Burke & Gillespie, of Springfield, and Griffith & Hoefert, of Alton (John W. Hoefert, Louis F. Gillespie, George B. Gillespie, and Robert E. Gillespie, of counsel), for appellant.

Chapman, Strawn & Kinder, of Granite City (Morris B. Chapman and Norman H. Kinder, Jr., of counsel), for appellee.

GOLDENHERSH, J.

Defendant appeals from the judgment of the Circuit Court of Madison County entered upon a jury verdict in the amount of $75,000.

Plaintiff's complaint states a cause of action based upon the Federal Employers' Liability Act (45 USCA § 51 et seq.) arising out of an occurrence in April, 1963, while plaintiff was employed as a pipefitter in defendant's yards at St. Louis, Missouri. In its answer, as an affirmative defense, defendant pleaded a release executed on June 17, 1963. In his reply, plaintiff avers that the release is not binding because it was "exacted" under a misapprehension of fact and an "erroneous conception as to the nature and extent of the disability suf-

fered by plaintiff," that the release is void because it is supported by "totally inadequate consideration," "it resulted from the overreaching by defendant and its agent of plaintiff in the procurement of same," and "it was procured from plaintiff by fraud and deception practiced upon him by the agents of defendant."

As grounds for reversal defendant contends that the closing argument of plaintiff's counsel was so inflammatory and prejudicial that the trial court abused its discretion in refusing to grant a new trial, that the verdict is excessive, and the court erred in giving two instructions tendered by plaintiff.

In its brief, defendant, in discussing plaintiff's closing argument states, "The legion of improper remarks hurled by Plaintiff's counsel at the jury contains unfortunate samplings of errors which have had a long and dishonorable tradition in jury trials. An enumeration of these errors reads like an infamous Who's-Who of abuse of argument which has been long condemned by the courts of all jurisdiction." Except for those instances hereinafter discussed, the record, however, shows no objection to the remarks of which defendant now complains.

During plaintiff's opening argument to the jury, there was one objection. That this objection was properly overruled is so obvious as to require no further comment.

Twice during plaintiff's final argument, defense counsel, without making an objection, interrupted the argument to say that he had not made statements attributed to him by plaintiff's attorney. In one instance, the court said "The jury heard it. It should not be personal between counsel"; and in the other, "It is argument."

In the course of the argument plaintiff's attorney said:

"There is evidence in these x rays here, Mr. Hoefert, and that is what galls you, there is evi-

33

dence that this man's back has convexity from scoliosis, a bowing of the back. Smile, it is not your back, Mr. Hoefert. You don't have to suffer. You are not the man who is out of work. You'll eat your good steaks and everything whether this man gets any money or not."

At that point, the following transpired:

"Mr. Dobbs: I object to the personal remarks of this man.

"The Court: Objection sustained.

"Mr. Dobbs: I move that a juror be withdrawn, Your Honor, and a mistrial declared. This is completely improper.

"The Court: Motion denied."

Following this incident, the argument of plaintiff's counsel was concluded without further objection.

■■■■ The rule governing review of assignments of error based upon alleged improper argument to the jury is clearly stated in Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249. The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial court has performed his duty and properly exercised the discretion vested in him. North Chicago St. R. Co. v. Cotton, 140 Ill 486, 29 NE 899. The attitude and demeanor of counsel and the general atmosphere of the trial are observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld. City of Chicago v. Chicago Title & Trust Co., 331 Ill 322, 163 NE 17.

■ ■ The statement of plaintiff's counsel was clearly improper, but in view of the fact that the objections above noted were the only ones made during arguments covering 28 printed pages, and after objection, counsel did not persist in the misconduct, we cannot say that the refusal of the trial court to grant a new trial was an abuse of discretion.

Defendant contends that the verdict is excessive and argues that the jury was actuated by some improper motive, "undoubtedly the prejudicial argument of plaintiff's counsel."

At the time of his alleged injury, plaintiff was engaged in installing a propane gas tank, cylindrically shaped, approximately 14 inches in diameter, 4½ to 5 feet in length, and weighing approximately 240 pounds. The gas tank was to be placed in a bunker on a car, the bunker being approximately 30 inches above ground level. The car was spotted on a track along one side of which there is a sidewalk. The witnesses, in describing the scene, referred to a "sidewalk" side, and a "dirt" side, of the car on which plaintiff was working.

The filled propane gas tank was brought to the car, on the sidewalk side, by a fork lift truck. A man working the sidewalk side rolled the tank off the sidewalk and tried to roll it over the rail nearer the sidewalk. Plaintiff, working on the dirt side of the car, was pulling the tank from under the car, and when he pulled back, "it caught on something and would not give and when it did give I went back with the tank and hit the underskirt of the passenger coach." He testified that he struck his back against the coach, and it hurt.

Plaintiff completed his shift, when he went home used a hot water bottle, and obtained some relief. He worked the next night, missed the following night, worked for approximately two weeks, missed work intermittently for the next six or seven weeks, and then resigned. He

worked for Illinois Terminal Railroad for several months, had further trouble with his back, and severe headaches. He was off several weeks, returned to work, and shortly thereafter left the employ of Illinois Terminal. Plaintiff testified that after a medical examination he was refused employment at the Frisco Railroad. He sought other employment and worked a day or two at Continental Boiler, and one or two days at the Pullman Company. He could not stand the work, and in the period of approximately 22 months between the date of his leaving the employ of Illinois Terminal, and the date of the trial, he had worked 3 or 4 days.

Plaintiff testified he had received some treatment from a Dr. Hamm who was not called as a witness.

In August, 1964, approximately 16 months after the injury, at the suggestion of his attorney, plaintiff saw Dr. John W. Deyton. Dr. Deyton testified that in his opinion plaintiff was suffering from an aggravated arthritic condition, that his condition is such that he is "not industrially employable," that his condition is permanent, and in his opinion the condition which he found is related to the occurrence of April 27, 1963.

Dr. John Parato, a physician who is employed part time at Missouri Pacific Employees Association Hospital in St. Louis, Mo., testified that on May 20, 1963, he diagnosed plaintiff's condition as a lumbar muscular strain, and that in his opinion, there was no connection between the trauma of April, 1963, and plaintiff's arthritic condition.

Dr. Marshall B. Conrad, an orthopedic surgeon, examined plaintiff on September 24, 1965, at defendant's request. He reviewed X rays taken at various times between May 20, 1963, and September 24, 1965. In answer to a hypothetical question he stated that in his opinion there could be aggravation of arthritis in the lumbar area, but not of arthritis in the cervical area.

An actuary called by plaintiff, testified that based upon plaintiff's age of 39.60 years, and earnings of $2.73 per hour, the sum required to return payments of $473.20 per month for the 385 months of plaintiff's life expectancy, at 4% would be $103,475.16 and at 4½%, $97,399.95.

■ ■ The courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury, and if the jury is properly instructed on the measure of damages, an appellate court should not substitute its judgment as to the sum to be awarded in a given case, for that of the jury. Smith v. Illinois Cent. R. Co., 343 Ill App 593, 99 NE2d 717; Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717; Ford v. Friel, 330 Ill App 136, 70 NE2d 626.

■ The assessment of damages is preeminently a jury function, Braswell v. New York, C. & St. L. R. Co., 60 Ill App2d 120, 208 NE2d 358. On the record before us we are not prepared to say the judgment is excessive.

■ Over defendant's objection, the court gave plaintiff's instruction 1A, as follows:

"The Court instructs the jury that if you find from the evidence and under the instructions of the Court that at the time the parties entered into the release in question they were both under the belief that plaintiff's injury was minor and not of severe consequence, and you further find that the said injuries were of a greater and more severe nature than contemplated by the parties at said time, then you may find that the release in question was executed as the result of a mutual mistake of fact and consequently is not a bar to plaintiff's action."

Defendant contends that the mutual mistake of fact, in order to avoid the release, must be a mistake as to plaintiff's existing physical condition at the time the release was given. It argues that if the parties are not mistaken as to the plaintiff's condition at that time, but are only mistaken as to the future developments or consequences of the known injury resulting in a subsequent deterioration of health, there is no mutual mistake. It states further that the record shows that "no one was mistaken as to the primary injury being a lumbosacral sprain plus minimal degenerative arthritis, or that it was the only injury sustained by the plaintiff." It argues that the arthritis which now allegedly disables plaintiff is not traumatic arthritis, but "at the most, wear and tear arthritis," and whether there would be any increase was conjectural at the time of the execution of the release. Defendant argues that the "primary vice" of the instruction is that it did not limit the consideration of the jury to the actual condition of the plaintiff at the time of the release, but rather allowed it to determine, without regard to the time element, whether plaintiff's physical condition, after the execution of the release, became more deteriorated as a result of progressive arthritis.

We do not discuss the cases cited by defendant in support of this contention, other than to say that they are cases involving unilateral, not mutual mistake. The instruction correctly instructed the jury on the issue presented. Reede v. Treat, 62 Ill App2d 120, 210 NE2d 833.

Defendant argues further, that the instruction incorrectly permitted the jury to establish the amount of proof necessary to establish a mutual mistake, since it does not state that the plaintiff was required to prove this issue by a preponderance of the evidence. The record shows that this instruction, as originally tendered, contained the language "if you find from a preponder-

ance of the evidence," and upon defendant's objection was modified by the deletion of the words "a preponderance of."

■■ We do not consider this charge of error for the reason that if the court erred, the error was induced by defendant's own action.

Over defendant's objection, the court gave plaintiff's instruction No. 2, defining the issues. The portions of the instruction to which defendant objected, and the giving of which it now urges as error, are:

> "The plaintiff claims he was injured and sustained damage and that the defendant was negligent in one or more of the following respects:
>
> "a. Failed to furnish plaintiff with careful and prudent fellow employees.
>
> . . . . . .
>
> "e. Violated its rules and regulations pertaining to the transportation of propane gas tanks.
>
> "Defendant further says that plaintiff has released his alleged cause of action against defendant. Plaintiff denies this and avers that any alleged release is not a binding one, as a defense, by defendant, because it was executed under a mutual mistake of fact as to the extent of plaintiff's disability, or that it resulted from misrepresentation made by defendant to plaintiff."

Although the words "careful and prudent fellow employees" were not used by the witnesses, there is evidence from which the jury could have found that plaintiff's fellow employees were neither careful nor prudent. There was testimony regarding defendant's rules, and defendant's Exhibit 2, offered and admitted in evidence, is a booklet titled "Safety Rules, Mechanical Department," which contains 11 rules under the heading "Handling Gas and Gas Cylinders."

■ ■ The requirement for the giving of an instruction that does not incorrectly state the law is that there be some evidence in the record to support the theory set out in the instruction. Biggerstaff v. New York, C. & St. L. R. Co., 13 Ill App2d 85, 141 NE2d 77. The evidence meets that requirement.

We find no error which warrants reversal, and the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

MORAN, J., concurs.

EBERSPACHER, J., dissents.