CEPHUS DAVIS, Plaintiff, Appellant, v. THE GULF, MOBILE & OHIO RAILROAD COMPANY, Defendant, Appellee.

(No. 69-57;

Fifth District—February 19, 1971.

Chapman, Strawn, Kinder, Talbert & Chapman, of Granite City, for appellant.

Pope & Driemeyer, of E. St. Louis, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiff, Cephus Davis, brought this action under the Federal Employee's Liability Act for injuries allegedly sustained due to the negligence of the defendant, Gulf, Mobile & Ohio Railroad Co. The case was tried to a jury and the plaintiff had recovery of $7,500.00. The Circuit Court of St. Clair County entered judgment upon the verdict. The plaintiff has appealed.

The facts which occasioned this lawsuit are as follows: The plaintiff, a 60 year old man, was an employee of the defendant and had been so employed for over 20 years as a laborer performing general task maintenance and repair work. The plaintiff, on May 25, 1967 was so engaged in general repair work on the defendant's track in the Venice yards, as one of a crew of four to replace a stock rail. The plaintiff's injury occurred while the crew was replacing the rail. The crew had removed the spikes and braces from one side of the rail but the rail did not come loose. While the plaintiff was attempting to free the rail, a co-worker struck the rail with a spike mall and the rail was sprung out of position. The end of the rail struck the plaintiff's left foot and came to rest upon it. The rail was not loose because heat expansion had caused tension in the track. The release of the tension caused the track to spring. The plaintiff suffered an abrased area one inch by ¾ inch on his left instep. There was no fracture or dislocation of any bone or joint in his foot or ankle.

The plaintiff physically is a very large man standing slightly over 6 feet in height and weighing almost 300 lbs. at the time of the injury. Because of his size he had had some medical problems with his feet and legs prior to the injury.

After the rail had been lifted from the plaintiff's foot, the plaintiff

drove himself to see a Doctor Chalfin. Dr. Chalfin had treated the plaintiff and the plaintiff's wife on occasions before May 25, 1967, for illness not associated with the plaintiff's employer. Dr. Chalfin treated the injury by giving the plaintiff a shot to prevent infection, dressing the wound and requesting the plaintiff to go the next day to the Missouri Pacific Hospital in St. Louis for X-rays. The plaintiff had the X-rays taken and the results were negative. Dr. Chalfin continued to treat the plaintiff for several days, primarily for swelling.

The plaintiff resumed work on July 26th after receiving clearance from the Missouri Pacific Hospital to so do. The Missouri Pacific Hospital is operated by several railroad unions for the benefit of railroad employees. In all, the plaintiff was off work for 43 days for which his wages would have been slightly in excess of $1,000.00. The plaintiff's work record since his return has been comparable to the period of time preceding the injury.

On August 28, 1967, the plaintiff, still complaining of the effects of the injury, went to see a Dr. Deyton of St. Louis. Dr. Deyton treated the plaintiff from August 28, 1967 until January 7, 1968 (the last treatment before the trial). In all, Dr. Deyton saw the plaintiff 19 times. At the time of the trial, the plaintiff still complained of intermittent pain in the foot associated with work and activity. The injured foot was also larger in size than the uninjured foot. Dr. Deyton's prognosis for the recovery of the injured foot was poor. The Doctor testified that the plaintiff would have disability by reason of the injury as the pain in his foot and ankle would increase as time went on and that the plaintiff would have difficulty in performing a full day's work. The Doctor further testified that there would be further medical treatment and expenses. However, the Doctor was not allowed to testify as to the cost of the treatment.

On cross-examination, over objection, the Doctor was questioned concerning his relationship with plaintiff's counsel and referrals that plaintiff's attorney had made to the Doctor. Questions were also asked regarding specific individuals and if the Doctor had testified for them in lawsuits.

The trial was concluded on its second day at 3:52 P.M. The plaintiff having no further evidence to present at that time requested a continuance until the following morning. The court denied the request for a continuance whereupon the defendant did not present evidence. After ruling on motions for directed verdicts, the court recessed for closing arguments the following court day.

In their closing arguments, both counsel made reference to the fact that plaintiff's attorney had sent the plaintiff to consult Dr. Deyton.

There was no testimony of the witnesses to support this statement of both counsel.

The plaintiff has brought this appeal. There are no questions raised on the pleadings or instructions. The plaintiff urges that the court erred in several particulars.

The plaintiff first asserts that it is improper cross-examination to call the Doctor's attention to other cases he has testified in and other patients he had treated and other lawsuits pending wherein the Doctor is treating the patient. The defendant asked a series of questions of Dr. Deyton which had the purpose of showing that the expert witness is frequently in the employ of counsel as such circumstances may well create bias on the part of the expert witness. Plaintiff contends that the defendant's questions went beyond the bounds which allow the defendant to inquire into the possible bias of the witness through inquiry into facts and circumstances which would create such a bias on the part of the expert witness.

The initial question propounded by defendant was "You do have occasion frequently, don't you to see patients that are referred to you by Mr. Chapman or his office, to testify on behalf of those patients who are either claimants or patients in lawsuits?" The Doctor answered, "I have received referrals from Mr. Chapman. Whether it would be proper to say frequent is a matter of interpretation of words". Defendant's counsel then inquired, "Could you give the court and jury some idea about how many such patients you see referred to you by Mr. Chapman, or his office, in the last 2 or 3 years?" to which plaintiff responded, "No Sir". The defendant then inquired if the doctor had treated 10 specific individuals that had had or presently had suits against railroads who were also represented by plaintiff's counsel, over plaintiff's continuing objection. In response to the specific inquiries in eight of the ten cases, the Doctor remembered the patient or the name of the patient, did not know who had referred them to him, and in two cases did not remember the person. In only one of the seven cases, in which the inquiry was made, did the Doctor remember testifying in a case against a railroad company. On redirect the Doctor testified that he had seen and treated a number of railroad men with injuries, did not remember whether they had been injured in their employment and stated that generally they had been treated extensively elsewhere. Defendant offered no evidence to support the inference of bias which the specific inquiries raised. Plaintiff made no motion to strike the questions and answers nor sought a direction to disregard, for a lack of evidence to show the connection.

Here the Doctor did not admit the frequency of any referrals by plaintiff's counsel so that the conduct of the witness and the circum-

stances of his situation became practically the sole available material to show if any bias existed and cross-examination was not improper for that purpose. (Wigmore on Evidence, 3rd ed. § 984.) In *Chicago City Ry. Co. v. Handy,* 208 Ill. 81, 69 N.E. 917, the Court said:

"It is competent to show that a witness * * * is in the employ of one of the litigants regularly or frequently as an expert witness, or to prove facts and circumstances which would naturally create a bias in the mind of the witness for or against the cause of either of the litigants" (208 Ill. 81 at 83) and at page 84 "and any fact which tends to show that he has the feelings of a partisan for the cause of one of the litigants or a bias against that of the other may be shown * * *"

In *McMahon v. Chi. City Ry. Co.,* 239 Ill. 334 at 341, the Court said, "The extent of an examination along this line is largely within the discretion of the trial court". In that case the Court went on to say, "We think however, that the question should have been limited to the number of times the witness had testified for appellant" (the Ry. Co.); the latter statement is described as "unsound" by Wigmore, *supra,* par. 949, footnote 4, p. 501.

In *Schoolfield v. Witkowski,* 54 Ill.App.2d 111, 203 N.E.2d 460, a question of cross-examination of a plaintiff's doctor arose; defense counsel inquired of the Doctor the number of times he had testified in various trials in the year preceding the trial and then asked if his testimony had not always been for the plaintiff, "the person seeking to gain money". The court overruled objections to the questions. The reviewing court said, "We believe the above questions were intended to show that the witness was biased in favor of the plaintiff, but asking whether the witness had, in the past year, testified only for plaintiffs was improper cross-examination. *Plambeck v. Chi. Ry. Co.,* 294 Ill. 302, 305, 128 N.E.2d 513".

■■ In the present case the Doctor on redirect testified that he had treated a number of railroad men with injuries, and was not asked whether he testified only for plaintiffs on cross-examination, and stated that he had received referrals from plaintiff's attorney but could not state how many nor whether they could be described as frequent. As a result the court did not abuse its discretion in failing to sustain the objections, to the question; while the authorities suggest that there are limits to such cross-examination to show bias, under all the circumstances here present, prejudicial error is not here shown.

■■ The plaintiff next asserts that remarks made in defendant's closing argument which supplied facts not in evidence, which facts were inferentially favorable to the defendant, were prejudicial, even though the plaintiff had made the same reference to the fact in his opening closing argument. The plaintiff in his opening and closing arguments stated

"his lawyer sent him to a good doctor". The defense counsel presented his argument as to why the plaintiff had been sent by counsel to the particular doctor. Then in plaintiff's closing, counsel commented, "We sent him to Dr. Deyton". The law in Illinois is that it is reversible error for counsel to comment on matters not in evidence. *Anderson v. Universal Delta*, 90 Ill.App.2d 23, 4 N.E.2d 21. However, since the plaintiff's counsel first brought the matter to the ears of the jury he can not now complain that the court erred in refusing to forbid the defendant's counsel to also comment.

■■ Plaintiff called defendant's Claim Agent as a witness under section 60 of the Civil Practice Act. Defendant objected and after preliminary questioning the objection was sustained. The court then refused to allow the witness to be called as a hostile witness. Plaintiff's counsel continued his examination of the witness following the court's rulings and there is nothing to indicate that he failed to fully develop all information which he might have obtained under cross-examination and no evidence which plaintiff otherwise produced contradicted or tended to dispute the witness's testimony. The witness testified that he was the Claim Agent for defendant; his duties were to investigate claims and that he was in charge of claims in a district or area extending from Sangamon County to the South Kentucky line on the properties of defendant; that defendant did not have District Claim Agents, but had Regional Claim Agents in Chicago and Mobile, Alabama. He further testified that he took statements from witnesses, took photographs and received initial injury reports from doctors who had examined those injured. He testified he did not engage Dr. Chalfin to make any examination of plaintiff. There was no evidence that the witness as Claim Agent had any supervision or control over any employees, nor that he had any authority to settle claims. The record reveals an absence of hostility on the part of the witness.

Plaintiff contends that reversible error was committed by the court in denying him the right to examine the witness as an adverse witness, and in support of the contention cites numerous cases. In *Frunk v. City of Calumet City*, 17 Ill.App.2d 285, 149 N.E.2d 774 (Abstr. opinion) a driver of a fire truck was within the category of "foreman" and as such could be examined as an adverse witness in view of the driver's testimony that he was fire captain and was boss of the crew he was working with. (Headnote 3, 149 N.E.2d 776.) In *Paris Flouring Co. v. Imperial Cotton Milling Co.*, 181 Ill.App. 215, a sales agent at a branch office was held to be a Superintendent or managing agent, "he had charge of several employees and assistant sales agents" and had "on behalf of defendant made the contract with the plaintiff here in question with the acquiescence of defendant". In *O'Connor v. Maryland Motor Car Ins. Co.*, 287

Ill. 204, a local agent of the defendant insurance company was examined as an adverse witness over the objection of the defendant. The Court in affirming the judgment said "No material error was committed by the trial court as to this examination". In *Dixon v. Montgomery Ward & Co., Inc.*, 351 Ill.App. 75, 114 N.E.2d 44, the head of the heating department of defendant's store was held to be a "managing agent", properly called as an adverse witness. In so holding the Court said he "had *supervision* and *control* of some people in his department. He submitted the contract to the plaintiffs and had charge of installation of the furnace".

Here the Claim Agent's examination was as thorough as it might have been under cross-examination, free from the harassment of objections, and it is not shown that plaintiff was precluded from the development of any material evidence from the witness, who answered with neither reluctance nor a showing of hostility. Under such circumstances we find neither substantial nor reversible error.

The court did not admit into evidence Dr. Chalfin's report. Plaintiff contends this is error as Dr. Chalfin was an agent of the defendant and the report is an admission against interest. The record does not indicate that Dr. Chalfin is an agent of the defendant. Dr. Chalfin has been the personal physician of the plaintiff and his wife prior to the injury and there is no indication that the plaintiff was in any way required or directed to go to Dr. Chalfin. The law is quite clear that for an agent to bind his principal he must be an agent.

■■ Next the plaintiff asserts that the court abused its discretion in not granting plaintiff's request for a continuance at 3:52 P.M. of the second day of the trial. There is no indication that the plaintiff was harmed thereby. The record indicates that plaintiff failed to get into evidence an actuarial table which he could not do the morning of the third day. The granting of continuance is within the discretion of the trial court and no abuse has been shown and it will not be disturbed by this Court.

■■ Plaintiff contends that the verdict was inadequate and resulted from the passion and prejudice on the part of the jury and the court's failure to admit proper evidence. We have not found and do not find that the court failed to admit proper evidence. The plaintiff had suffered no fracture or dislocation but only soft tissue injury, and he had returned to work on a full time basis. This does not bespeak itself of passion and prejudice against the plaintiff. In *Wells v. Gulf, Mobile & Ohio R. Co.*, 82 Ill.App.2d 30, 226 N.E.2d 662, this Court said:

> "The courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury, and if the jury is properly instructed on the measure of damages, an appellate court should not substitute its judgment as to the sum to be awarded in a

given case, for that of the jury. Smith v. Illinois Cent. R. Co., 343 Ill.App. 593, 99 N.E.2d 717, Hulke v. International Mfg. Co., 14 Ill.App.2d 5, 142 N.E.2d 717; Ford v. Friel, 330 Ill.App. 136, 70 N.E.2d 626.

"The assessment of damages is preeminently a jury function, Braswell v. New York, C. & St. L. R. Co., 60 Ill.App.2d 120, 208 N.E.2d 358 * * *"

Again in *Blyzes v. Midwest Towing Co., Inc.,* 109 Ill.App.2d 48, 55, this Court held:

"The courts of review in this state have also repeatedly held that the assessment of damages is primarily a question of fact for the jury and that an appellate court should not substitute it's judgment for that of the jury's as to the amount to be awarded in a given case. Lau v. West Towns Bus Co., 16 Ill.2d 442, 158 N.E.2d 63; Wells v. Gulf, M. & O. R. Co., 82 Ill.App.2d 30 and cases cited therein."

Finally the plaintiff urges that the court erred in not finding the plaintiff free from contributory negligence as a matter of law. Since this is an F. E. L. A. case in which contributory negligence does not bar recovery, but only goes to the mitigation of damages, and the damages awarded could reasonably be considered adequate, it cannot be determined whether the jury considered plaintiff's conduct contributorily negligent. The general rule may be gleaned from *Hitt v. Langel,* 93 Ill.App.2d 386, 236 N.E.2d 118.

"* * * The general rule is that negligence and contributory negligence are questions of fact for the jury, and so long as a question remains whether either party has performed his legal duty or had observed that degree of care imposed upon him by the law, and the determination of that question involves weighing and the consideration of the evidence, the question must be submitted as one of fact, Piper v. Lamb, 27 Ill. App. 2d 99, 169 N.E.2d 164 (1960); Peterson v. Hendrickson, 335 Ill.App. 223, 81 N.E.2d 266 (1948). Even where the facts are admitted or undisputed but where a difference of opinion as to the inference that may legitimately be drawn from them exists, the questions of negligence and contributory negligence ought to be submitted to the jury. It is primarily for the jury to draw the inference. Piper v. Lamb, supra."

In the present case the jury could have determined that the plaintiff failed to observe what a man of his experience and years should have observed. The trial was constrained and, the jury could have found that the plaintiff did not act as a man with 20 years experience should act.

Judgment affirmed.

GOLDENHERSH and MORAN, JJ., concur.